


FILED

SEP 30 2014

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>MIKIALA GARCIA BATDORF,<br><br>          Debtor(s). | Case No. 13-22960-C-7<br><br>Adversary No. 13-2198 |
| MIKIALA GARCIA BATDORF,<br><br>          Plaintiff(s),<br><br>v.<br><br>SALLIE MAE and DIRECT LOAN SVC SYSTEM,<br><br>          Defendant(s). | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case was tried on September 25, 2014, before the Honorable Christopher M. Klein. Plaintiff appeared pro se; defendant Educational Credit Management Corporation appeared by Barry H. Spitzer, Esq.; defendant United States appeared by Jeffrey J. Lodge, Assistant United States Attorney.

The court having considered the evidence and testimony submitted at trial and taking into account the record in this adversary proceeding makes the following findings of fact and conclusions of law.

JURISDICTION

Jurisdiction is founded on 28 U.S.C. § 1334. This is a core proceeding that the bankruptcy court has the power to hear and determine pursuant to 28 U.S.C. § 157(b)(2)(O). To the extent that this adversary proceeding may ever be determined not to be a core proceeding, the parties nevertheless agree that the bankruptcy court may hear and determine the matter subject to review under 28 U.S.C. § 158.

FINDINGS OF FACT

The plaintiff in this chapter 7 case is the bread winner in her family, which includes her husband and three children, ranging in age from 1 to 12 years old.

She filed this chapter 7 case on March 5, 2013, as an individual case rather than as a joint case with her spouse. Plaintiff is employed in the mortgage industry with a gross income of approximately $4,400 per month. In addition, she is a notary public and is able to earn several hundred dollars additional in that capacity.

Beginning in about 2003, plaintiff attended the proprietary school Devry University and obtained a degree that did not enable her to obtain employment with the type of income that was represented to her. One reason for this was that the quality of the training was not sufficient to satisfy potential employers.

Plaintiff found employment with an entity engaged in the subprime mortgage lending industry from which she was able to earn a modest income commuting to San Francisco for work. That

employment ended in November 2007 when she was laid off. As of that time, before she was laid off, she had paid approximately seven monthly payments on her student loans. Shortly before she was laid off, she and her spouse, with the assistance of her widowed father-in-law, purchased a residence in Placerville, California, adjacent to her father-in-law's house.

When the plaintiff was laid off, it took a considerable period of time for her to find new employment. In addition, she had a child during that period. Her husband was able to obtain some income by undertaking handyman jobs and gardening but otherwise was not employed.

The family struggled to make its mortgage payments for several years with the assistance of her father-in-law.

Plaintiff obtained employment in December 2008. She has been otherwise employed as a mortgage loan processor from December 2008 through the present. Her initial income was $9.50 per hour with Paramount Equity Mortgage. In March 2012, she was employed by Masters Team Mortgage with an hourly income of $23 per hour plus bonuses. She has worked diligently at that job as a mortgage loan processor and currently earns an average of $4,400 per month gross.

Once the plaintiff returned to work, her spouse continued to be the stay-at-home parent. She had a third child who is now one year old. In May 2012, the plaintiff's father-in-law died suddenly of cardiac arrest.

Thereafter, the plaintiff was unable to remain current on the mortgage on her residence, and the property was ultimately foreclosed and sold at a trustee's sale in September 2013.

The plaintiff and her family relocated to rental premises in Roseville, California.

In November 2007, the plaintiff executed a Federal Consolidation Loan Application and Promissory Note for approximately $14,773.46 at 6.125 percent per annum. As of July 10, 2013, the aggregate unpaid balance was $20,376.04.

On or about April 4, 2012, the plaintiff executed a Federal Direct Consolidation Loan Application and Promissory Note from the U.S. Department of Education for loans under the William D. Ford Federal Direct Consolidation Loan Program for a total of $60,575.86 at a rate of 4.75 percent. No payments have been made on that loan.

As of May 2014, plaintiff's current net average income is $3,410. In addition, the plaintiff must pay for medical insurance expenses.

The plaintiff has four dependents: her husband, age 41, who is not employed outside the home, and three children, ages 1, 5, and 12. The plaintiff contends that the following monthly expenses are necessary to maintain a minimum standard of living:

| Item | Amount |
|---|---:|
| Rent | $1550 |
| Electricity | 250 |
| Gas | 40 |
| Telephone | 181 |
| Automobile insurance | 83 |
| Cable/internet | 142 |
| Clothing | 100 |
| Groceries | 950 |
| Water | 55 |
| Meals outside home | 110 |
| Recreation | 200 |
| Household supplies | 300 |
| Unforeseeable | 100 |

The plaintiff has no retirement savings and no savings for the three children.

- 4 -

If the plaintiff were to participate in the income-based plan under the William D. Ford Direct Loan Program, she would be required to pay $147.74 per month with respect to all of the student loans in question. Under that program, the payments would be subject to an annual adjustment to reflect increases and decreases in income and would be forgiven after 25 years of payments. It is possible that there would be tax liability occasioned by the forgiveness of any debt at that time.

The debtor received tax refunds in 2013 and 2014 of $8,470.03 and $9,791.07, respectively.

## CONCLUSIONS OF LAW

The plaintiff contends in this action under 11 U.S.C. § 523(a)(8) that excepting her student loan debt form discharge will impose an undue hardship on her and her dependents. The plaintiff emphasizes the undue hardship on her dependents. The prevailing test for what constitutes undue hardship for purposes of § 523(a)(8) requires (1) that the debtor prove inability to maintain, based on current income and expenses, a minimal standard of living for her and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that debtor has made good faith efforts to repay the loans. <u>United Student Aid Funds v. Pena (In re Pena)</u>, 155 F.2d 1108, 1111 (9th Cir. 1998), <u>adopting</u> <u>Brunner v. New York State Higher Education Services Corp.</u>, 831 F.2d 395, 396-97 (2d Cir. 1987).

The plaintiff argues that her ability to maintain a

minimal standard of living for her and her dependents would be imperiled by being forced to pay the loans. In particular, she focuses upon the needs of her dependent children and the demands of giving them an adequate standard of living. She also contends that her ability to earn additional income is limited because of the poor quality of the education she obtained from Devry University. In other words, she contends that her income is expected to remain stable for the remainder of her working life. Finally, she maintains she has made good faith efforts to repay the loans. She points to actual payments she made in 2007 before the time she was laid off and the family finances spiraled downward into foreclosure.

The court is sympathetic to the larger point that the plaintiff makes that she should not be, in the words of the United States District Court in <u>Brunner</u>, condemned "to a life of poverty for the term of the loan." <u>Brunner v. New York State Higher Education Services Corp. (In re Brunner)</u>, 46 B.R. 752 at 754 (SDNY 1985).

Indeed, there is good argument that the <u>Brunner</u> test is not the appropriate test because of changes in the law since the time of the Brunner bankruptcy. The law in effect at that time provided for discharge of student loan debts on account of either undue hardship or the passage of five years.[1] The district court

---

[1] § 523.  Exceptions to discharge

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt to a governmental unit, or a nonprofit institution of higher education, for an education loan, unless

A.  such loan first became due before five years before

- 6 -

in <u>Brunner</u> remanded with directions that the loans be declared nondischargeable without prejudice to her seeking discharge of the loans on the five-year clause. <u>Brunner</u>, 46 B.R. at 758. Similarly, the Second Circuit in its <u>Brunner</u> decision concluded that "We note that Judge Haight's [District Judge] order was without prejudice to Brunner's seeking relief pursuant to R. Bankr. P. 4007(a)(b)." <u>Brunner</u>, 831 F.3d at 395. The irony is that Marie Brunner's student loan debt was discharged by virtue of the five years. The Court of Appeals' decision was rendered five years and five months after Ms. Brunner completed her education.

In contrast, now the only way out of a student loan under § 523(a)(8) is "undue hardship." The question is what type of demonstration is required of "undue hardship" when the only way out ever is undue hardship. It seems that the latter question is a far different question that what was before the courts in <u>Brunner</u> and that the perpetuation of the <u>Brunner</u> test is not appropriate or, at a minimum, needs to be re-calibrated.

Nevertheless, <u>Pena</u>, which adopts the <u>Brunner</u> test, is the law of the circuit that this court is obliged to apply. The income-based repayment opportunity requires plaintiff to pay $150 per month on her current budget in order to remain in good standing on the loan and obtain eventual forgiveness of the loan

---

        the date of the filing of the petition; or

  B.    excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8) (1978).

balance, albeit with a potential for tax liability for loan forgiveness.  26 C.F.R. § 301.7122-1.  This court is persuaded, after assessing the debtor's overall situation and all of the evidence she has proffered in support, that she has not satisfied the requirements of the <u>Brunner</u> test.

The court is persuaded that the plaintiff has made efforts to maximize her income and that her long-term prospects for significantly increased income are minimal.  It is noted that her nonworking spouse ought to be able to produce some income once their children are in school.  Since plaintiff emphasizes the effect of repayment on dependents, it is not inappropriate to consider whether Mr. Batdorf will be in a position to earn income for the household.  Thus, the longer term is perhaps not so bleak as it appears from the plaintiff's static income.

The court is satisfied that plaintiff has made good faith efforts to repay the loans.  First, there is the evidence of actual repayments before the downward spiral in the family's financial situation.  Second, there is the evidence of the extent at which the plaintiff juggled finances in an attempt to protect their residence from foreclosure.  Third, the court assesses the plaintiff's credibility as confirming her sincerity in attempting to deal with her loans.  The ultimate difficulty is that the first prong of the <u>Brunner</u> test is not satisfied.

Case 13-02198    Filed 09/30/14    Doc 97

       For these reasons, the student loan debts in question will and shall remain excepted from discharge pursuant to § 523(a)(8).

       An appropriate order will issue.

       Dated   September 26, 2014.

                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Mikiala Garcia Batdorf
1361 Ridgerun Drive
Roseville CA 95747

Barry H. Spitzer
980 9th Street, Suite 380
Sacramento CA 95814

Jeffrey J. Lodge
2500 Tulare St #4401
Fresno CA 93721